UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| DERRICK THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. _____ |
| TROOPER CHARLES HEWITT, IV, ) | |
| in his official and individual capacity, ) | |
| ) | |
| Serve: ) | |
| Charles Hewitt, IV ) | JURY TRIAL DEMAND |
| 9204 Cork Place ) | |
| Burke, Virginia 22015 ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT**

Plaintiff Derrick Thompson ("Mr. Thompson," or "Plaintiff"), by counsel, and for his Complaint against Virginia State Police Trooper Charles Hewitt IV ("Trooper Hewitt") alleges as follows:

**NATURE OF ACTION**

1. This is an action for damages under 42 U.S.C. § 1983 ("Section 1983") and Virginia common law stemming from Trooper Hewitt's use of excessive force against Mr. Thompson during a traffic stop in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Trooper Hewitt's actions also constitute assault and battery under Virginia common law.

2. Plaintiff seeks reasonable attorneys' fees under 42 U.S.C. § 1988 ("Section 1988") and other applicable laws.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this action asserts a deprivation of one or more federal constitutional rights under Section 1983.

4. This Court has supplemental jurisdiction over Mr. Thompson's state law claims against Defendant under 28 U.S.C. § 1367(a) because the facts of the federal and state claims both occurred in this judicial district and form part of the same case or controversy.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

## PARTIES AND RELEVANT NON-PARITES

6. Mr. Thompson is a Black male and is a resident of the Commonwealth of Virginia.

7. Trooper Hewitt is, and at all times relevant to this Complaint, was, working for the Virginia State Police as a Trooper, and was a person subject to suit under Section 1983.

8. At all times relevant to this Complaint, Trooper Hewitt was in uniform and displaying his badge of authority.

9. At all times relevant to this Complaint, Trooper Hewitt was acting under color of state law.

10. The non-party female Virginia State Trooper who initiated the traffic stop of Mr. Thompson is referred to herein by her badge number as "Trooper 589." Her name is presently unknown.

11. The non-party male Virginia State Trooper present during the initiation of the traffic stop of Mr. Thompson is referred to herein by his badge number as "Trooper 1225." His name is presently unknown.

12. At all times relevant to this Complaint, Trooper 589 and Trooper 1225 were on duty, displaying their badge of authority, and acting under color of state law.

# FACTS

13. On April 20, 2019, two Virginia State Troopers, Trooper 589 and Trooper 1225, initiated a traffic stop of a vehicle being operated by Mr. Thompson in Fairfax, Virginia.

14. Trooper 589 informed Mr. Thompson that his inspection sticker was expired and alleged that she detected an odor of marijuana.

15. Trooper 589 announced her intent to search Mr. Thompson's vehicle, and Mr. Thompson declined to consent to the search.

16. Trooper 589 returned to her patrol vehicle to call for back-up.

17. Mr. Thompson, alone in his vehicle and fearful of police violence, began to film the interaction using his cell phone.

*Mr. Thompson's Interaction with Trooper Charles Hewitt, IV*

18. Approximately ten minutes later, Trooper Hewitt arrived at the scene of the traffic stop.

19. Trooper Hewitt approached the driver's side of Mr. Thompson's vehicle. Trooper 589 and Trooper 1225 stood at the passenger's side of Mr. Thompson's vehicle.

20. Mr. Thompson's front driver's-side and front passenger's-side window were partially rolled down to allow him to interact with the Troopers.

21. Mr. Thompson requested the name, badge number, and identification from each of the three Troopers.

22. Trooper 589 ignored Mr. Thompson's request entirely, while Trooper 1225 claimed he had forgotten his name and badge number.

23. Mr. Thompson repeated his request to Trooper Hewitt, indicating that, as a taxpayer, he believed his request to be justified.

24. Trooper Hewitt responded to Mr. Thompson, "You pay about forty cents of state taxes."

25. Trooper Hewitt radioed dispatch and stated, "This one's a little snippy" before identifying himself to Mr. Thompson.

26. Mr. Thompson told Trooper Hewitt he believed his detention and the search of his vehicle to be illegal.

27. Trooper Hewitt responded to Mr. Thompson, "Brother, how do you think this is going to end? Are you ready to go through all of this today, just for that? There's probably not even any weed in here."

28. Trooper Hewitt continued to insist Mr. Thompson exit his vehicle, and Mr. Thompson repeatedly asserted his belief that his detention was illegal.

29. Eventually, Trooper Hewitt indicated toward Mr. Thompson's cell phone camera and shouted:

> This is going to get posted to YouTube. This is going to get posted, after all of this, and I guarantee . . . Look at this, everybody who is going to see this, I guarantee, they are going to say, you sir, you got the coolest cop in the whole nation. The most coolest, calmest, collected cop. Because I ain't even trying to be here to do that to you, man. And all the comments, there's going to be two thousand comments saying, "You, what a dumbass."

30. Trooper Hewitt reached through Mr. Thompson's driver's side window and unlocked the driver's side door of Mr. Thompson's vehicle.

31. Trooper Hewitt commanded Mr. Thompson to step out of the vehicle.

32. Mr. Thompson raised his hands up but remained seated in his vehicle.

33. Mr. Thompson reiterated his belief that neither his detention nor Trooper Hewitt's request to step out of the vehicle were lawful.

34. Trooper Hewitt leaned into Mr. Thompson's face and yelled, "Take a look at me, I AM A FUCKING SPECIMEN RIGHT HERE BUDDY, YOU HAVE GOTTEN ON MY LAST NERVE, ALRIGHT?"

35. Mr. Thompson, still engaged in only passive resistance and visibly frightened replied, "I have my hands up."

36. Trooper Hewitt shouted, "YOU ARE GOING TO GET YOUR ASS WHOOPED IN FRONT OF FUCKING LORD AND ALL CREATION. I AM GOING TO GIVE YOU ONE MORE CHANCE."

37. Trooper Hewitt indicated toward Mr. Thompson's cell phone and screamed, "YOU CAN BRING THAT WITH YOU, I'LL LET YOU FILM THE WHOLE THING."

38. Mr. Thompson repeated to Trooper Hewitt, "I am not resisting, my hands are up."

39. Trooper Hewitt told Mr. Thompson he was now under arrest for disobeying a lawful command.

40. Trooper Hewitt again yelled into Mr. Thompson's face, "I AM GIVING YOU TO THE COUNT OF THREE. ONE, TWO . . .".

41. At this point in the interaction, Trooper Hewitt looked directly into Mr. Thompson's cell phone camera, smiled, and said, "Watch the show, folks."

42. Trooper Hewitt lunged into Mr. Thompson's vehicle and wrapped his right arm around Mr. Thompson's neck, securing it with his left arm and forming a chokehold.

43. Trooper Hewitt pulled Mr. Thompson out of his vehicle by his neck while Mr. Thompson yelled, "My life is in danger!"

44. Trooper Hewitt shouted at Mr. Thompson, "HOW DO YOU LIKE THAT MOTHERFUCKER? HOW DO YOU LIKE THAT?"

45. Trooper Hewitt forcibly threw Mr. Thompson face-down onto the pavement, causing cuts and abrasions to his face and left leg.

46. Trooper Hewitt placed either his elbow or knee on Mr. Thompson's neck.

47. Mr. Thompson pleaded with Trooper Hewitt, "My hands are behind by back! I am not resisting, sir! Sir, please get off my neck! You are harming me!"

48. Trooper Hewitt secured both of Mr. Thompson's arms behind his back and placed him in handcuffs.

49. When Trooper Hewitt raised Mr. Thompson, handcuffed, to his feet, Mr. Thompson asked for medical assistance.

50. Mr. Thompson's face was bleeding profusely and his shirt was soaked with blood.

51. Trooper Hewitt responded, "you're not even hurt."

52. Trooper 589 and Trooper 1225 were present and looked on throughout the entirety of Trooper Hewitt's above-described interaction with Mr. Thompson.

53. Trooper 589 and Trooper 1225 proceeded to search Mr. Thompson's vehicle. No evidence of any crime was found.

54. Trooper Hewitt sat Mr. Thompson, still handcuffed, in the front passenger seat of his patrol vehicle.

55. Trooper Hewitt attempted to explain his actions and insisted to Mr. Thompson they had nothing to do with Mr. Thompson's race.

56. Trooper Hewitt moved Mr. Thompson to the rear of his patrol car and transported him to the Fairfax County Adult Detention Center.

## COUNT I
### Civil Rights Violation of 42 U.S.C. § 1983: Fourth Amendment
### Excessive Use of Force
*Against Trooper Hewitt in his individual and official capacity*

57. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

58. At all material times, Trooper Hewitt was acting under color of state or local law.

59. Trooper Hewitt used unreasonable and excessive force to execute the seizure of Mr. Thompson and the search of his vehicle.

60. Trooper Hewitt intentionally placed Mr. Thompson in a dangerous chokehold, removed him from his vehicle by his neck, and forcibly threw him to the pavement outside of his vehicle.

61. By his actions, Trooper Hewitt deprived Plaintiff of the established right to be free from excessive force and unreasonable search and seizure, in violation of Plaintiff's rights under Section 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

62. An objectively reasonable officer in Trooper Hewitt's position would not have employed the same use of force under the circumstances described herein.

63. Trooper Hewitt stated his intent to perform "a show" for the viewers watching the video footage filmed on Mr. Thompson's cell phone before using force on Mr. Thompson.

64. Mr. Thompson was not suspected of a serious or violent crime, was not actively resisting arrest or attempting to flee, and did not pose an immediate threat to the safety of Trooper Hewitt or others.

65. As the direct and proximate cause of Trooper Hewitt's actions, Mr. Thompson suffered physical and mental injuries, including emotional pain and suffering.

66. Trooper Hewitt's use of force was retaliatory, reckless, wanton, and punitive, engendering a claim for punitive damages.

67. Mr. Thompson is entitled to declaratory and monetary relief, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT II
## Common Law Assault
*Against Trooper Hewitt in his individual capacity*

68. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

69. The force used excessive and unreasonable force to effect the arrest of Mr. Thompson and search of Mr. Thompson's vehicle during a routine traffic stop.

70. Trooper Hewitt's words and actions, including his threat to "whoop [Mr. Thompson's] ass" placed Mr. Thompson in apprehension of imminent harmful and offensive bodily contact.

71. As the direct and proximate cause of Trooper Hewitt's actions, Mr. Thompson suffered physical and mental injuries, including emotional pain and suffering.

72. Mr. Thompson suffered intense fear and mental distress as a result of Trooper Hewitt's threat to cause imminent physical harm to him.

73. Mr. Thompson's mental anguish was rendered more severe by the fact that Trooper Hewitt's behavior exemplified problems facing Black men in their dealings with law enforcement.

74. Trooper Hewitt's decision to intimidate and threaten Mr. Thompson and place him in fear of physical farm was retaliatory, reckless, wanton, and punitive, engendering a claim for punitive damages.

75. Mr. Thompson is entitled to declaratory and monetary relief, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT III
### Common Law Battery
*Against Trooper Hewitt in his individual capacity*

76. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

77. Trooper Hewitt committed a harmful and offensive touching of Mr. Thompson's person without privilege or consent.

78. The force used excessive and unreasonable force to effect the arrest of Mr. Thompson and search of Mr. Thompson's vehicle during a routine traffic stop.

79. Trooper Hewitt placed Mr. Thompson in a chokehold and removed Mr. Thompson from his vehicle by his neck.

80. Trooper Hewitt forcibly threw Mr. Thompson to the pavement outside of his vehicle and leaned his weight onto Mr. Thompson's neck while placing Mr. Thompson in handcuffs.

81. Trooper Hewitt's actions caused Mr. Thompson physical harm, including cuts and abrasions to his face and left leg.

82. Trooper Hewitt's actions also caused pain, suffering, fear, emotional distress, and humiliation to Mr. Thompson.

83. Trooper Hewitt's use of excessive force against Mr. Thompson was retaliatory, wanton, and punitive, engendering a claim for punitive damages.

84. Mr. Thompson is entitled to declaratory and monetary relief, including compensatory damages, punitive damages, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DERRICK THOMPSON requests that this Court enter judgment in his favor, and against Defendant TROOPER CHARLES HEWITT, IV, on all Counts and further:

(a) Award compensatory damages to Plaintiff, plus past and future pecuniary damages on each of the above-stated Counts in an amount that can only be determined in discovery; and in addition

(a) Award Plaintiff Derrick Thompson punitive damages as to each of his respective Counts in amounts to be determined at trial;

(b) Award attorney's fees, costs, and expenses incurred by Plaintiff Derrick Thompson in this action pursuant to statute; and

(c) Award any further relief this Court deems just and appropriate under the circumstances.

## **JURY DEMAND**

**PLAINTIFF DERRICK THOMPSON DEMANDS A TRIAL BY JURY.**

Dated: December 3, 2020

Respectfully,

/s/
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine L. Herrmann, VA Bar No. 83203
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd., Ste. 700
Arlington, VA  22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
dcraumer@erlichlawoffice.com
kherrmann@erlichlawoffice.com